**[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 281.]**

CLEVELAND BAR ASSOCIATION *v.* MINEFF.

[Cite as *Cleveland Bar Assn. v. Mineff*, 1995-Ohio-181.]

*Attorney at law—Misconduct—Public reprimand—Providing financial assistance for living expenses to needy client—DR 5-103(B).*

(No. 95-799—Submitted May 23, 1995—Decided August 23, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-79.

————————————

{¶ 1} Relator, Cleveland Bar Association, charged respondent, George Mineff, Jr., of Rocky River, Ohio, Attorney Registration No. 0009057, with one count of having violated DR 5-103(B) (providing financial assistance to client for expenses other than litigation costs). A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on the parties' "Stipulations and Waiver of Hearing."

{¶ 2} The parties stipulated to the violation of DR 5-103(B) and to the facts underlying the misconduct. The stipulations state, in part:

"1. [Respondent] was admitted to the practice of law in Ohio in 1984. The son of immigrants, he grew up in Parma, Ohio, where he attended a Catholic grade school. He attended a military high school, obtained his undergraduate degree from the University of South Carolina in 1981, and his law degree from Cleveland Marshall in December of 1983. [Respondent] was married in December of 1984, and he and his wife have three children, ages 8, 4, and 3, with another expected in June of 1994. He is 34 years old.

"2. [Respondent] has engaged in the full time practice of law in Ohio since 1984, with a practice concentrated in workers' compensation, personal injury, and criminal law. He is a member of the Cleveland, Ohio State and American Bar

Associations, the Cuyahoga County Criminal Defense Lawyers Association, the Ohio Association of Criminal Defense Lawyers, and the Cleveland Association of Compensation Attorneys. In 1991 he received a Trustee's award from the Legal Aid Society of Cleveland * * * for his pro bono work in assisting needy clients.

"3. Mario Cianci was injured in an industrial accident, while employed, on May 31, 1990. Prior to contacting [respondent], he was represented by two other lawyers concerning the matter and had filed a workers' compensation claim * * * and a companion personal injury case.

"4. Mr. Cianci had, by May 1991, apparently become frustrated with the workers' compensation system, and on or about May 4, 1991, was brought to [respondent's] office by a relative whom [respondent] had represented. At the time Mr. Cianci was not, despite a previous hearing, receiving any temporary total benefits (lost wages), *inter alia*, because of an appeal and other positions taken by the employer for whom he had worked at the time of his injury. [Respondent] contacted Mr. Cianci's then counsel, who turned the file over to [respondent], and on or about May 6, 1991, [respondent] began representing Mr. Cianci.

"5. The fee arrangement under which [respondent] undertook representation was a 33% contingency (whether or not appealed to Court), with Mr. Cianci responsible for expenses of litigation. After undertaking representation [respondent] filed a motion for additional allowance of a herniated disc on behalf of Mr. Cianci and represented Mr. Cianci at a hearing held in November of 1991.

"6. Approximately seven weeks after [respondent] undertook representation of Mr. Cianci, on or about June 25, 1991, Mr. Cianci asked [respondent] for money for living expenses. At the time, [respondent] states [that] Mr. Cianci told him he was eating only one meal a day, and it was apparent to [respondent] that Mr. Cianci was losing weight. [Respondent] states [that] Mr. Cianci's clothes were ragged, and he was not able to pay his rent. During the time

[respondent] represented Mr. Cianci, Mr Cianci was evicted from at least one residence, and received a notice of eviction from a second. * * *

"7.  On June 25, 1991, in response to Mr. Cianci's request, [respondent] wrote Mr. Cianci a check in the amount of $500 * * * .  Thereafter, * * * [r]espondent wrote additional checks to Mr. Cianci, totaling, including the * * * [$500 check], $5300.

"8.  There was no prior agreement between [respondent] and Mr. Cianci as to any of the checks written, and [respondent] states [that] each check was written in response to a request by Mr. Cianci for funds which he needed at the time to live decently.  There was no discussion, agreement, or understanding concerning money given to Mr. Cianci for living expenses prior to or contemporaneous with [respondent's] undertaking his representation.

"9. [Respondent's] normal office policy with respect to costs of litigation is to hold a client responsible for such costs and to deduct them from settlement proceeds if not already paid by the client.  Mr. Cianci's situation was an anomaly in [respondent's ] usual practice, and [respondent] had no policy concerning living expenses.  Since the filing of the complaint herein, [respondent] has not provided financial help or assistance for living expenses to needy clients, even if necessary to permit them to withstand delays in litigation with better financed adversaries.

"10.  On November 15, 1991, a hearing was held on some aspects of Mr. Cianci's workers' compensation claim.  As a result of the procedural positions taken by Mr. Cianci's employer and the hearing officer's decision to take the matter under advisement, it was not possible to obtain a final ruling on temporary total disability at that hearing, and a decision was not mailed on that issue until December, 1991, after [respondent] no longer represented Mr. Cianci.

"11. After the hearing (then more than 17 months since the date of his initial injury) Mr. Cianci became increasingly frustrated and upset with the workers' compensation system, and more abusive toward persons associated with it.  On

November 18, 1991, [respondent] states [that] Mr. Cianci burst into [respondent's] office yelling and using abusive language, and as a result [respondent] released Mr. Cianci from his employment contract with him and withdrew as his counsel.

"12. Mr. Cianci obtained subsequent counsel who represented him in the workers' compensation matter, and in his personal injury action, and both were concluded to the substantial benefit of Mr. Cianci.

"13. [Respondent] has not been repaid the money he gave to Mr. Cianci, has asserted no claim over that money, and has not made any effort to collect that money, and[,] at the time of his releasing Mr. Cianci from his obligations under the contract[,] told Mr. Cianci that it would not be necessary for him to repay [respondent].

"14. Since the time [respondent] attended law school[,] DR 5-103(B) and similar rules have been changed in several jurisdictions to explicitly permit advancing funds to needy clients when needed to permit them to withstand delays in litigation. [Respondent] did not research the specifics of DR 5-103(B) or related rules nor did he make any effort to determine, prior to the time the initial complaint herein was filed, whether or not the conduct was prohibited in Ohio.

"15. The facts indicate that [respondent] did not intentionally or willfully violate a [D]isciplinary [R]ule; did no harm to, but rather benefitted, his client; has cooperated fully with the [r]elator in its investigation of this matter; and was the only person harmed by his conduct herein (to the extent that there was financial harm by virtue of his not being repaid for the assistance provided to Mr. Cianc[i]). There was no interference with [respondent's] independent professional judgment in his representation of Mr. Cianci[.]

"16. * * * Based upon all of the foregoing, upon [respondent's] exemplary record as a lawyer, upon the fact that to the extent there may be a violation of DR 5-103(B)[,] it is technical and not willful, and yet consistent with the tenor of the ruling in the case of *Toledo Bar Assn. v. McGill* (1992), 64 Ohio St.3d 669 [597

4

N.E.2d 1104], [r]espondent[] acknowledges that he may, under the applicable law and rules of Ohio, be [publicly] reprimanded for his conduct herein; and [r]elator, also in view of all of the foregoing, recommends a public reprimand."

{¶ 3} The panel determined that respondent had violated DR 5-103(B), as admitted, and it recommended that he be publicly reprimanded for this misconduct, consistent with the sanction imposed in *McGill, supra*. The board adopted the panel's report, including its findings of fact, conclusions of law, and recommendation.

―――――――――――

*Raymond J. Grabow, Edwin H. Jacobs* and *Donald Cybulski*, for relator.
*Mark H. Aultman*, for respondent.

―――――――――――

*Per Curiam.*

{¶ 4} We concur in the board's findings of misconduct and agree with its recommendation. Therefore, we publicly reprimand George Mineff, Jr. for having violated DR 5-103(B). Costs taxed to respondent.

*Judgment accordingly.*

DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

MOYER, C.J., and PFEIFER, J., dissent and would suspend respondent from the practice of law for six months, stayed, pursuant to the Chief Justice's dissent in *Toledo Bar Assn. v. McGill* (1992), 64 Ohio St.3d 669, 671-672, 597 N.E.2d 1104, 1106.

―――――――――――